**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER DYE** | § | |
| **TDCJ-CID #805217** | § | |
| | § | |
| **VS.** | § | **C.A. NO. C-07-266** |
| | § | |
| **MARY COMSTOCK, ET AL.** | § | |

**MEMORANDUM OPINION AND ORDER DISMISSING CERTAIN CLAIMS
AND DEFENDANTS AND RETAINING CASE
AND ORDER ON PLAINTIFF'S MOTION TO EXCLUDE AFFIDAVIT**

This case is a civil rights action filed by a state prisoner pursuant to 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam), cert. denied, 527 U.S. 1041 (1999). Plaintiff's *pro se* complaint must be read indulgently, Haines v. Kerner, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, Denton v. Hernandez, 504 U.S. 25, 33 (1992).

Applying these standards, the Court dismisses plaintiff's Eigth Amendment claims against defendants Mary Comstock, Fatima Pollard, and Nurse Jane Doe with prejudice for

failure to state a claim and as frivolous . See 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1). The Court retains plaintiff's claim of deliberate indifference to his serious medical needs against Dr. Herrera.

**I.    Jurisdiction.**

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. Upon consent of the plaintiff (D.E. 18), this case was assigned to the undersigned United States magistrate judge to conduct all further proceedings, including entry of final judgment. See 28 U.S.C. § 646(c); Neals v. Norwood, 59 F.3d 530 (5th Cir. 1995).

**II.   Procedural background.**

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and is currently incarcerated at the McConnell Unit in Beeville, Texas. He filed his original complaint on June 12, 2007, alleging claims of deliberate indifference to his health and safety against certain TDCJ officials and officers at the Connally Unit, in Kenedy, Karnes County, Texas, and the McConnell Unit, alleging that defendants failed to protect him from inmate assaults and attacks because they refused to house him in a single-man cell, despite his request that they to do so. (D.E. 1). Plaintiff believes that he is at a higher risk of attack because he gained a certain amount of "criminal notoriety" at the time he committed the offenses for which he was convicted.[1] Indeed, while

---

[1] Plaintiff identifies himself as the "MOPAC rapist" who allegedly raped fourteen women in the Travis County area between 1993 and 1995, before being apprehended.

at the Connally Unit, plaintiff was assaulted by another inmate and suffered serious injuries.

By order entered July 9, 2007, plaintiff's claims against the Connally Unit defendants were severed and transferred to the United States District Court for the Western District of Texas, San Antonio Division. 28 U.S. C. § 1404(a).   (See D.E. 7).

On August 13, 2007, plaintiff filed an amended complaint against the McConnell Unit defendants, classification officer Mary Comstock, Nurse Jane Doe, Dr. Maximiliano Herrera, and administrator Fatima Pollard. (D.E. 16). In addition to failure to protect, plaintiff claims that defendants were deliberately indifferent to his serious medical needs because they failed to transport him to the University of Texas Medical Branch ("UTMB") Hospital in Galveston, Texas for an appointment following surgery.

On August 14, 2007, a Spears[2] hearing was conducted on plaintiff's claims against the McConnell Unit defendants. Following the hearing, the Attorney General ("AG"), as *amicus curiae*, was ordered to submit a Martinez[3] report including: (1) plaintiff's medical records from 2005 to present; (2) a declaration or affidavit from an individual who has reviewed plaintiff's medical file and who can determine if plaintiff now has, or has had since March 2005, a single-cell restriction and the basis for that restriction; and (3) a determination of

---

[2] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

[3] Martinez v. Aaron, 570 F.2d 370 (10th Cir. 1978); Cay v. Estelle, 789 F.2d 318, 323 n. 4 (5th Cir. 1986).

3

whether a doctor at UTMB-Galveston, on October 4, 2005, ordered that he be seen for an ENT follow-up visit and whether that visit occurred. (D.E. 19).

On October 26, 2007, the AG filed the Martinez report. (D.E. 26).

Following two extensions of time (D.E. 27, 29), on February 19, 2008, plaintiff filed objections to the Martinez report. (D.E. 31).

### III.     Plaintiff's allegations and claims.

The following claims were made in plaintiff's original complaint (D.E. 1), amended complaint (D.E. 16), or at the Spears hearing:

Following his arrest, plaintiff was in the custody of the Travis County Jail for approximately 16 months. (D.E. 16 at ¶ 12). While at the Jail, he was housed in a single-man cell, not at his request, but rather, as a result of "professional prudence" by jail officials, due to his "criminal notoriety." Id. However, once he entered the TDCJ, he was housed with other inmates. In August 1998, on the Holliday Unit, he was attacked by an inmate named Francisco Nunez. Id. Plaintiff was able to disarm Nunez, and assault charges were filed against plaintiff only. Id.

Plaintiff was "shuffled along" TDCJ channels, and in September, 1998, he arrived at the Connally Unit. (D.E. 16 at ¶ 13). There, he requested to be placed in a single-man cell. Id. His request was denied, and he was housed with David Martin, an inmate serving a life sentence for murder. Id. at ¶ 14. On April 25, 2005, offender Martin attacked plaintiff while he was asleep. Id. Plaintiff suffered a fractured orbital, broken cheekbone, strangulation injuries, and a portion of his nose was bitten off. Id.

4

Plaintiff was taken to UTMB- Galveston where he remained through May 9, 2005. (D.E. 16 at ¶ 14). Plaintiff claims that during his hospital stay, he underwent "nose reattachment surgery and other extensive medical services." Id.

Plaintiff arrived on the McConnell Unit on May 12, 2005. Plaintiff claims that an Austin physician intervened on his behalf and prompted Dr. Herrera to implement a permanent single-cell medical restriction. (D.E. 16 at ¶ 17). Dr. Herrera made the entry, and plaintiff observed his permanent single-cell restriction on a McConnell Unit computer screen on August 7, 2005. Id. However, on September 20, 2005, plaintiff was told that no such housing restriction was noted in his file. Id. Plaintiff asked Dr. Herrera, Ms. Comstock, and Ms. Pollard, why the restriction had been removed, but these defendants failed to answer him. Id. To avoid a disciplinary case, plaintiff accepted a two-man cell assignment. Id. at ¶ 18. He was housed with Corey Benjamin, an inmate who was from the same hometown as plaintiff's past assailant, David Martin. Id.

In September 2005, plaintiff reported to UTMB-Galveston to discuss surgical options to correct the nasal obstruction caused by the assault. Upon his return to the McConnell Unit on October 20, 2005, plaintiff was again housed in a two-man cell. (D.E. 16 at ¶ 19). This time his cell-mate was Charles Rice, another individual from David Martin's hometown. Id. Plaintiff alleges that this housing assignment was beyond coincidence because "the town in question accounts for only a minuscule of TDCJ prisoner totals..." Id. On October 24, 2005, plaintiff sent a certified letter to Ms. Comstock stating that he needed to be transferred to a single-man cell for his safety and ongoing recuperation from the earlier April 25, 2005 attack

5

by offender Martin.  Id.; see also 23-24 (copy of certified letter).  Ms. Comstock failed to reply.  Id.

On March 23, 2006, plaintiff was "mysteriously summoned" to the McConnell Unit infirmary where he was told that he would be transported for psychiatric services "as he requested."  (D.E. 16 at ¶ 20).  Plaintiff testified that, in ten years confinement, he had never requested psychiatric services.  However, Nurse Jane Doe told him that, unless he signed a blank form denying medical services, he would have to sit there all day or have security take him to the bus.  Id.  Plaintiff relented and signed the form, and was allowed to return to his cell.  Id.  A similar incident happened shortly thereafter, and he was again forced to sign a blank form denying medical services.  Id.

Plaintiff claims that defendants Comstock, Herrera, and Pollard were deliberately indifferent to his health and safety because they failed to help him get a single-man cell assignment.  He claims that he repeatedly sent I-60s and letters complaining to these defendants, but that they did not respond to his inquiries.  Plaintiff testified that he spoke to Ms. Pollard about the cell assignment in September 2005, and she told him that he had no medical restrictions.  In addition, she mentioned the fact that plaintiff had a dispute with her husband, a factory supervisor, leading plaintiff to believe that she would not help him because of a conflict of interest.  Plaintiff also claims that these three defendants have conspired to violate his constitutional rights by "altering plaintiff's housing on October 20, 2005."  He claims that Comstock had Pollard alter his housing assignment, and that Pollard engaged Dr. Herrera to assign him to labor assignments in violation of his established

medical restrictions. He claims that Dr. Herrera was deliberately indifferent to his heath and safety because he refused to "restore" the single-man cell restriction that he contends was previously noted in his medical records. He claims that Nurse Jane Doe harassed him into signing the blank release medical forms, in deliberate indifference to his health and safety.

Plaintiff admitted at the Spears hearing that he has not been assaulted by another inmate while at the McConnell Unit. In addition, he has not received any threats against him. He testified that he has not filed any life in danger complaints ("LID") nor requested that any offender protection investigations ("OPI") be instigated. Plaintiff is currently housed in a two-man cell. His current cell-mate is *not* from David Martin's hometown of Port Arthur, Texas.

Plaintiff seeks actual damages in the amount of $618.55, undetermined punitive damages, "declaratory relief" that the Court direct the TDCJ assign him to a single-man cell, and injunctive relief ordering the TDCJ to ensure that he receive follow-up medical services at UTMB-Galveston.

### III. DISCUSSION

**A.     Legal standard.**

Regardless of whether a plaintiff has properly exhausted his administrative remedies, his action may be dismissed for failure to state a claim upon which relief can be granted. 42 U.S.C. § 1997e(c)(2). "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."

7

West v. Atkins, 487 U.S. 42, 48 (1988); see also Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002). The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed. Id.

**B.     Martinez report materials.**

The AG has submitted copies of plaintiff's TDCJ and UTMB medical records from March 2005 forward, in addition to the affidavit of Dr. Steven Mercado, a physician who has reviewed plaintiff's medical records and responded to the questions posed by the Court. [4]

The medical records establish that on April 25, 2005, at approximately 9:35 a.m., plaintiff was taken to the Connally Unit emergency room for facial trauma following a fight. (D.E. 26, Ex. A at 141). Nursing notes indicate that the tip of plaintiff's nose was bitten off, and that there was moderate bleeding. Id. There was a deep laceration beteen the nose and upper lip. Id. Plaintiff had abrasions to his face, left arm, right wrist, and a swollen right pinky. Id.

Plaintiff was transported to UTMB-Galveston where he arrived at 3:35 p.m. (D.E. 26, Ex. B at 13-14, 28-31). The diagnoses upon admission were: nasal tip avulsion; upper lip laceration; vermillion border laceration; maxillary sinus fracture; mandibular condyle

---

[4] Plaintiff has objected to Dr. Mercado's affidavit. (D.E. 31). As discussed below, the Court finds plaintiff's objections to be meritorious, and discounts the opinions and conclusions set forth by Dr. Mercado which are unsupported by the medical record.

fracture; and chipped front upper teeth. Id. at 14, 28-31. The emergency room physician, doctor, Dr. Healey, applied a dressing to the tip of plaintiff's nose and reattached the flap of bitten skin. Id. at 14, 28-31. In addition, he stitched plaintiff's upper lip. Id. Plaintiff was started on antibiotics and pain medications, and a consultation with the plastic surgery department was scheduled for the following day. Id.

On April 26, 2005, Nurse Williamson noted that the dressing on plaintiff's nose was still in place and the stitches in his upper lip were holding. (D.E. 26, Ex. B at 9).

On April 28, 2005, Dr. Healey noted that plaintiff's nose was healing well. He continued plaintiff on his medications, and scheduled an appointment with plastics. Id. at 44.

On April 29, 2005, notes cautioned plaintiff that he must apply the bacitracin ointment to the tip of his nose for 7 days. (D.E. 26, Ex. B at 6). In addition, it was noted that there was some discoloration of the tip, and that plastic surgery might be required in the future. Id. at 42-43.

On May 3, 2005, plaintiff was seen in the ENT clinic for nasal construction and valve collapse. (D.E. 26, Ex. B at 10, 141). He was scheduled to return on September 13, 2005, for further evaluation. Also on May 3, plaintiff was seen by psych services, upon referral of the plastic surgery department. Id. at 2-3. Plaintiff was eligible for certain plastic surgery on his nose; however, it was noted that he had a history of self-mutilation, including, attempting to remove his own larynx, such that a consult was needed. Id. at 3-4. Regarding his mental

state, the psychiatrist noted: "Patient currently preoccupied with his wanting to be placed in a single cell to avoid further harm being done to him by fellow inmates." Id. at 4.

Plaintiff was discharged from UTMB-Galveston on May 6, 2005 with instructions to take his psych medications and to keep his follow-up appointments with ENT and plastics. Id. at 38-39. He was returned to the Connally Unit.

On May 11, 2005, plaintiff was seen in the Connally Unit infirmary for care following his discharge from UTMB-Galveston. (D.E. 26, Ex. A at 124-125). The plan was to house plaintiff in a single-man cell for ninety days. Id. at 124.

On May 18, 2005, Connally Unit physician Romeo Rojas confirmed plaintiff's single-cell housing restriction but increased the restriction from 90 days to 6 months. (D.E. 26, Ex. A at 139).

On May 26, 2005, plaintiff reported to the Connally Unit infirmary inquiring about the single-cell restriction. (D.E. 26, Ex. A at 130). Plaintiff was advised that Dr. Rojas had ordered the single-cell restriction on May 18, 2005. Id.

On June 7, 2005, plaintiff was seen in the McConnell Unit for complaints of tinnitus, vertigo, and mild rhinitis. (D.E. 26, Ex. A at 137-38). Dr. Herrera noted that plaintiff's nose was healing well. Id. at 137.

On June 14, 2005, plaintiff reported to the McConnell Unit infirmary complaining about a groin rash. (D.E. 26, Ex. A at 128-29). He also told the medical staff that he had scheduled a follow-up appointment in Galveston for his nose. Id. at 128.

10

On August 22, 2005, plaintiff reported to the McConnell Unit infirmary complaining about sleep disturbances and relating that he had twice been assaulted by his cell-mates when asleep. (D.E. 26, Ex. A at 135). Dr. Herrera ordered: "ADD RESTRICTION 11 #2 **Permanently**."[5] Id. (emphasis added).

On September 13, 2005, plaintiff was seen by Dr. Alan Cowan at the UTMB-Galveston Otolaryngology Clinic. (D.E. 26, Ex. B at 1-2, 65). Dr. Cowan noted that the tip of plaintiff's nose had healed well; however, the avulsion left him with a retraction of his columella as well as nasal valve collapse. Id. Plaintiff requested corrective surgery to open his nasal passages. Id. at 1. The surgery was scheduled for the following month. Id. at 2.

On October 3, 2005, plaintiff was admitted to UTMB-Galveston for nasal obstruction surgery. (D.E. 26, Ex. B at 46-48). Dr. Cowan performed the operation with no complications. Id. Plaintiff was discharged the following day in good condition. Id. at 53. He was instructed to return for a follow-up visit in two to three weeks. Id. at 55.

---

[5] The Court takes judicial notice that, per TDCJ's Classification Plan, all restrictions relevant to an inmate's housing assignment are to be determined by the medical staff and entered on the inmate's Health Summary for Classification form ("HSM-18"). The HSM-18 is the document by which the medical staff communicates to the Unit Classification Committee ("UCC") any and all medical considerations that the UCC may need to consider in making its various assignments, such as for unit, housing, jobs, disciplinary, treatment plans, and transportation. Section II of the form addresses Housing Assignments, with the following options listed under heading "A": (1) No Restriction; (2) Single Cell Only; (3) Double Cell Only; (4) Special Housing (Housing With Patient With Like Medical Condition); or (5) Cell Block Only. There is no copy of plaintiff's HSM-18 in the records provided. It is not clear what restriction Dr. Herrera is ordering be made permanent. There is no section 11 on the form. It could be that Dr. Herrera intended Roman Numeral II, not 11, and restriction no. 2, which is the single-cell restriction.

Plaintiff has not returned to UTMB-Galveston for a follow-up visit with Dr. Cowan. (Plaintiff's testimony; Mercado Aff't at ¶ 2).

On March 23 and April 5, 2006, plaintiff signed refusal of treatment or services forms. (D.E. 26, Ex. A at 234, 232). [6]

**C.     Analysis.**

Plaintiff alleges that defendants were deliberately indifferent to his health and safety because they refused to house him in a single-man cell.  He argues that the Travis County Jail found it "prudent" to do so, and in fact, he suffered no injury while in the Jail's custody.  Conversely, once he was transferred to the TDCJ, he was twice attacked in his sleep: once at the Holliday Unit, and once at the Connally Unit.  He claims that his cell assignments at the McConnell Unit have been suspicious because his roommates are from the same small town as the inmate who seriously injured him at the Connally Unit.  He claims that he saw a permanent single-cell restriction entered in his medical file, but that it was removed without explanation, and that defendants refuse to answer his questions about the removal of the restriction.  He claims that he was denied a follow-up ENT appointment in Galveston.  Finally, he claims that Nurse Jane Doe harassed him into signing documents refusing medical, in deliberate indifference to his health.

Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the

---

[6] The Medical personnel obtaining the refusal was M. Garcia in March, and D. Kerr in April.  It is not clear whether or not one of these individuals is Nurse Jane Doe.

Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8-10, 112 S. Ct. 995, 999-1001 (1992); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399 (1981). A deprivation must be sufficiently serious to violate the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994).

### 1. Failure to protect.

Prison officials have a duty to protect prisoners from violence at the hand of other inmates. See Cantu v. Jones, 293 F.3d 839, 844 (5th Cir. 2002) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). A prison official is deliberately indifferent to the inmate's safety if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Id. (citing Farmer, 511 at 847). Deliberate indifference describes a state of mind "more blameworthy than negligence;" there must be "more than ordinary lack of due care for the prisoner's interests or safety." Farmer, 511 U.S. at 835. Deliberate indifference may be inferred from the fact that the risk of harm is obvious. Hope v. Pelzer, 536 U.S. 760, 738-39 (2002).

Plaintiff alleges that he is not safe in a two-man cell. But the past attacks on him and defendants' knowledge of those assaults does not establish that he is at a serious risk of harm. Plaintiff testified that, since arriving on the McConnell Unit in June 2005, he has not been threatened or assaulted. He has not been assigned a cell mate involved in the former attacks. He has been assigned to a two-man cell the majority of his time there, and he has not complained of this arrangement. He has never filed a LID complaint or an OIP. There is

13

simply no evidence to suggest that plaintiff is at a greater risk of harm of assault than any other inmate by being housed in a two-man cell. Plaintiff fails to state a claim of failure to protect against any defendant. Accordingly, plaintiff's failure to protect claims against all defendants are dismissed for failure to state a claim and as frivolous.

### 2. Medical needs.

Prison officials are liable for failure to provide medical treatment if they are deliberately indifferent to a prisoner's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). Allegations that medical personnel should have attempted different diagnostic measures or alternative methods of treatment do not state a claim. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

In his affidavit, Dr. Mercado states that plaintiff had a single-cell restriction for "99 days" per Dr. Rojas' orders following the first repair of his nose, and that Dr. Herrera terminated the restriction on September 7, 2005 because the 99 days had elapsed. (D.E. 26, Ex. C, Mercado Aff't at 1). However, Dr. Mercado simply misreads the medical file. First, the initial single-cell restriction was ordered on May 11, 2007 for 90 days. (D.E. 26, Ex. A at 124). On May 18, 2005, Dr. Rojas ordered that the single-cell restriction remain in place for six months. Id. at 139. He specifically noted: "Plan is as follows: Housing restriction due to medical reasons II A 2 Due to P 3 CT X 6 months." Id. This six-month time frame is again referenced in a letter dated May 25, 2005, in which a Connally Unit nurse reassures

plaintiff that he has a single-cell restriction for six-months, that started on May 18, 2005. Id. at 221.

Dr. Mercado states that on September 7, 2005, Dr. Herrera ordered that the single-cell restriction be removed; however, in all the material offered by the AG, there is no document dated September 7, 2005, and there is no document ordering the removal of the single-cell restriction. Moreover, plaintiff argues that the unidentified PERMANENT RESRICTION ordered by Dr. Herrera on August 22, 2005 must be a single-man cell restriction as it was ordered in response to plaintiff's fears of being attacked in his sleep by his past cell-mates. (D.E. 26, Ex. A at 230). In addition, plaintiff claims that, as late as May 2006, his HSM-18 still provided for single-cell housing. (D.E. 31 at 6).

Plaintiff's objections to the affidavit of Dr. Mercado are well-founded. Plaintiff has established that he had valid medical restrictions, that defendants knew of the single-cell restriction and the purposes behind it, yet at some point, no longer enforced that restriction. There is evidence suggesting the restriction should be permanent, and no evidence ending it.

Concerning whether plaintiff was seen at UTMB for his follow-up appointment with Dr. Cowan, there is no dispute that this did not occur. Dr. Mercado suggests several possible reasons: first, that plaintiff refused to go; second that it was the Connally Unit's responsibility to schedule the appointment; and finally, that UTMB did not schedule an exact date and therefore, it took the McConnell Unit more time to schedule the appointment. There

is no evidence to support Dr. Mercado's conclusion that within the two week time period in which plaintiff was supposed to return to UTMB, he refused to do so.  In March and April, 2006, that is, almost six months after the operation, plaintiff did refuse to go to UTMB, but, according to plaintiff, Nurse Jane Doe told him the appointments were for pysch services, not ENT.  Moreover, the UTMB records for the ENT clinic do not indicate "no show" on those dates, casting doubt on whether an appointment was actually scheduled.      Despite the fallacies in Dr. Mercado's affidavit and his misreading of the medical file, plaintiff fails to state a claim of deliberate indifference to his serious medical needs as to defendants Comstock, Pollard, and Nurse Doe.  Although plaintiff complained to Ms. Comstock and Ms. Pollard about the single-man cell restriction, for purposes of housing based on medical needs, only medical personnel can determine the restrictions and include them in a prisoner's HSM-18.  Plaintiff has no evidence to suggest that Ms. Comstock and Ms. Pollard did not forward his concerns to the medical department.

   As to his claim that Nurse Jane Doe harassed him into signing a refusal of medical treatment form, he fails to state a claim of deliberate indifference.  He does not claim that Nurse Doe knew of a serious medical need and ignored that need.  Indeed, regardless of the reason for the appointment, be it for psych services or ENT, Nurse Jane Doe was merely attempting to send plaintiff to UTMB-Galveston for some type of medical treatment.  Further, there is simply no allegation that Nurse Jane Doe had any involvement concerning the single-cell restriction.

Plaintiff has stated a claim of deliberate indifference to his serious medical needs against Dr. Herrera. Under TDCJ rules, only a doctor or other qualified medical personnel can make determinations regarding housing limitations. On May 18, 2005, Dr. Rojas ordered a 6-month single-cell pass following the reattachment of plaintiff's nose tip. Despite Dr. Mercado's affidavit to the contrary, there is no indication in the file that the restriction was ever removed; however, before the six months was over, plaintiff was housed in a two-man cell at the McConnell Unit. Plaintiff, his family, and his family physician, all wrote to Dr. Herrera requesting that he be housed in a single-cell, but Dr. Herrera took no steps to do so. Then there is the notation made by Dr. Herrera in plaintiff's medical file requiring some type of permanent restriction, but it is not known what that restriction is, and Dr. Mercado's affidavit offers no guidance on the issue.

Moreover, plaintiff had a second surgery at UTMB to open his nasal passages. When he was returned to the McConnell Unit, he was immediately placed in a two-man cell. Contrasted with Dr. Rojas' six-month single-cell limitation, Dr. Herrera's failure to impose the single-cell restriction following nose surgery may amount to deliberate indifference. Finally, there is no dispute that plaintiff was not seen, and still has not been seen, by Dr. Cowen for the follow-up ENT appointment.

For purposes of § 1915A screening, plaintiff's has demonstrated that Dr. Herrera "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical

needs." Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir.1985). Thus, the Court retains plaintiff's claim of deliberate indifference to his serious medical needs against Dr. Herrera.

**IV.    Conclusion.**

For the foregoing reasons, plaintiff's Eighth Amendment claims against defendants Mary Comstock, Fatima Pollard, and Nurse Jane Doe are dismissed with prejudice for failure to state a claim and as frivolous. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1). In addition, the Court dismisses plaintiff's failure to protect claim against for Dr. Herrera. The Court retains plaintiff's claim of deliberate indifference to his serious medical needs against Dr. Herrera, and service shall be ordered on this defendant. Plaintiff's motion to exclude the affidavit of Dr. Mercado (D.E. 31) is granted to the extent mentioned in this order, and denied in all other respects.

ORDERED this 26th day of March, 2008.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE