IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER DYE** | § | |
|    **TDCJ-CID #805217** | § | |
| | § | |
| **VS.** | § | **C.A. NO. C-07-266** |
| | § | |
| **MARY COMSTOCK, ET AL.** | § | |

**MEMORANDUM AND RECOMMENDATION
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pending is defendant Dr. Maximilliano's motion to dismiss plaintiff's complaint for failure to exhaust administrative remedies (D.E. 38), which is construed as a motion for summary judgement. See Fed. R. Civ. P. 12(b)(6). Plaintiff has filed a response in opposition. (D.E. 43). For the reasons stated herein, it is respectfully recommended that defendant's motion to dismiss be granted, and that plaintiff's claims be dismissed for failure to exhaust administrative remedies. 42 U.S.C. § 1997e(a).

**I.  Jurisdiction.**

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

**II.  Procedural Background.**

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and is currently incarcerated at the McConnell Unit in Beeville, Texas. He filed his original complaint on June 12, 2007, alleging claims of deliberate indifference to his health and safety against certain TDCJ officials and officers at

the Connally Unit in Karnes County, Texas, and the McConnell Unit in Beeville, alleging that certain prison officials failed to protect him from inmate assaults and attacks because they refused to house him in a single-man cell, despite his request that they to do so. (D.E. 1). While at the Connally Unit, plaintiff was assaulted in his sleep by another inmate. Plaintiff suffered serious injuries necessitating surgical intervention, including re-attachment of his nose.

By order entered July 9, 2007, plaintiff's claims against the Connally Unit defendants were severed and transferred to the United States District Court for the Western District of Texas, San Antonio Division. 28 U.S. C. § 1404(a). (See D.E. 7).

On August 13, 2007, plaintiff filed an amended complaint against the McConnell Unit defendants: classification officer Mary Comstock, Nurse Jane Doe, Dr. Maximilliano Herrera, and administrator Fatima Pollard. (D.E. 16). On August 14, 2007, a Spears[1] hearing was conducted on plaintiff's claims against the McConnell Unit defendants. Following the hearing, the Attorney General ("AG"), as *amicus curiae*, submitted a Martinez[2] report concerning plaintiff's medical condition and any restrictions related thereto, including housing. (D.E. 26). Plaintiff filed objections to the Martinez report. (D.E. 31).

On March 32, 2008, plaintiff's claims against Mary Comstock and Fatima Pollard were dismissed (D.E. 32), and service was ordered on Dr. Herrera. (D.E. 33).

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

[2] Martinez v. Aaron, 570 F.2d 370 (10th Cir. 1978); Cay v. Estelle, 789 F.2d 318, 323 n. 4 (5th Cir. 1986).

On May 12, 2008, Dr. Herrera filed the instant motion to dismiss, arguing that plaintiff has failed to state a claim upon which relief can be granted because he failed to exhaust his administrative remedies. (D.E. 38). On June 9, 2008, plaintiff filed a response in opposition to Dr. Herrera's motion to dismiss. (D.E. 43).

### III.   Summary Judgment Evidence.

In support of his motion to dismiss, defendant offers the business records affidavit of Sandra K. Murphy, who is employed as the TDCJ Administrator of Offender Grievances. (DSJ, Ex. A).[3] According to Ms. Murphy, for the period of time from March 2005 to the present, plaintiff filed two grievances while still at the Connally Unit related to his request for a single cell assignment. (See DSJ, Ex. A at 5-8). In addition, he filed two grievances while at the McConnell Unit: Grievance No. 2006085588, received by McConnell Unit officials on January 23, 2006 (DSJ Ex. A at 1) and Grievance No. 2006136563, received by McConnell Unit officials on April 13, 2006 (DSJ Ex. A at 3-4).

Plaintiff offered the following evidence, attached to his original complaint, D.E. 1, in support of his claims:[4]

(1) I-60 dated 5/2/06 in which plaintiff inquires at to his current medical restrictions. By response dated May 5, 2006, he is told:

---

[3] Reference to Dr. Herrera's motion, D.E. 38, is to "DSJ"; reference to plaintiff's response, D.E. 43, is to "PR."

[4] Plaintiff included copies of grievances he filed at the Connally Unit, D.E. 1 at 18-19, 21-22. These grievances are dated prior to his arrival at the McConnell Unit, and as such, do not involve Dr. Herrera.

3

> Per request 5-19-2005 HSM-18 Health Summary for Classification: (I) Unit of Assignment: No restriction; (II) Housing Assignment: 99 Ssingle cell only and bunk assignment, lower bunk only; row assignment: no restriction; (III) Work Assignment/Restrictions: No lifting over [unlegible]; no repetitive use of hands; no work in direct sunlight, no temperature extremes, & no humidity extremes. (IV) Disciplinary process: No restrictions; (V) ITP: No restrictions; (VI) Transportation: No restrictions.

D.E. 1 at 20.

>  (2) I-60 dated 9/13/05, directed to Mary Comstock, McConnell Unit Classification Officer, wherein plaintiff writes:
>
>> When did my single cell restriction get removed? On whose authority was this done?
>>
>> Dr. Herrera will verify the restriction. He made it permanent on August 7, 2005, here at ML48.

D.E. 1 at 24-25. There is no response to this I-60.

>  (3) I-60 dated 9/25/05, directed to Fatima Pollard at McConnell Unit, wherein plaintiff writes:
>
>> I need the single cell restriction enacted May 18, 2005 and modified August 7, 2005 by Dr. Herrera to be confirmed by you for HSM-18 Summary for Classification.

D.E. 1 at 28-29.

>  (4) Letter dated October 4, 2006, from Dr. L.E. Arnold, plaintiff's free world primary care physician, to Dr. Herrera, in which Dr. Arnold requests that Dr. Herrera "follow the Connally unit with a permanent single occupancy cell assignment for Christopher at this time."

D.E. 1 at 32.

4

In addition, plaintiff has offered the affidavits of three offenders who testify that, since the April 2005 nose-biting incident at the Connally Unit, plaintiff has shown signs of anxiety and sleep-disorder problems that he did not have prior to that time. D.E. 1 at 34-36.

## IV.   Summary judgment standard.

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. Id. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving

party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." Anderson, 477 U.S. at 250-51.

**V.     Discussion.**

    **A.     Exhaustion.**

Defendant moves for summary judgment to dismiss plaintiff's claims on the grounds that he has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e.

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents. Porter v. Nussle, 534 U.S. 516, 532 (2002); Clifford v. Gibbs, 298 F.3d 328, 330 (5th Cir. 2002). Moreover, a prisoner is

6

required to exhaust his administrative remedies even if damages are unavailable through the grievance process. Booth v. Churner, 532 U.S. 731, 734 (2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001). A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2382 (2006). Because exhaustion is an affirmative defense, inmates are not required to plead or demonstrate exhaustion in their complaints. Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910, 921 (2007).

The TDCJ provides a two-step procedure for presenting administrative grievances. Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam).[5] A prisoner must pursue his grievance at both the Step 1 and Step 2 level in order to exhaust his administrative remedies. See Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004), citing Wright v. Hollingsworth, 260 F.3d 357, 358 n.2 (5th Cir. 2001).

The purpose of the exhaustion requirement is to alert prison officials of problems so that the prison has a chance to address the claims before they reach federal court. Woodford, 126 S. Ct. at 2388. As acknowledged by the Supreme Court, Congress intended the administrative process to "filter out some frivolous claims and foster better-prepared

---

[5] The inmate first presents his claim in a Step 1 grievance filed at the institutional level, and, next, in a Step 2 grievance at the regional level. Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998) (citing to TDCJ Administrative Directive No. AD-03.82 (rev. 1), Policy, ¶ IV (Jan. 31, 1997)). If an inmate does not receive a written decision within 180 days after filing his Step 2 grievance, he may proceed with his other state or federal court remedies. Tex. Gov't Code § 501.008(d)(2).

7

litigation once a dispute did move to the courtroom, even absent formal factfinding." Booth, 532 U.S. at 737.

Here, defendant maintains that plaintiff failed to exhaust his administrative remedies because (1) he did not file a Step 2 grievance as to either of the Step 1 grievances he filed at the McConnell Unit; and (2) the Step 1 grievances that he did file, Grievance No. 2006136563 and Grievance No. 2006085588, do not identify Dr. Herrera as violating plaintiff's constitutional rights, nor do they allege *any* affirmative claim against Dr. Herrera so as to put Dr. Herrera or prison officials on notice of plaintiff's allegations against him. (DSJ at 2-3). The summary judgment evidence supports defendant's position.

In his first grievance, Grievance No. 2006085588, received by McConnell Unit officials on January 23, 2006, plaintiff complains that on January 19, 2006, he was threatened by Industrial Specialist Caesar Moreno. (DSJ Ex. A at 3-4). In addition, he complains that Mr. Moreno requires him to perform work that is in violation of his medical restrictions, and he requests that his work assignment be changed. Id. at 3. By response dated February 9, 2006, Warden Morales denied this grievance stating that there was insufficient evidence to support plaintiff's claim against Mr. Moreno, and that his job assignment was within his medical restrictions. Id. at 4. There is no related Step 2 grievance.

In his second grievance, Grievance No. 2006136563, received by McConnell Unit officials on April 13, 2006, plaintiff complains that his HSM-18 medical restrictions are not being honored. In particular, he writes:

> On April 7, 2006, I was changed from utility squad to to kitchen temporary. On the same date, I notified unit administration, classification, and food services that my medical restrictions, including UTMB HSM-18 categories 9, 16, 19, 20 21, and subjective vertigo condition confirmed by UTMB doctors, make a food service work assignment in obvious violation of my medical status. With each party, I requested return to utility squad. On April 10, 2006, I received reply from Keith Farrell, FSM IV, that my restrictions comply with working in the food service department. Either Mr. Farrell did not properly investigate the restrictions referenced in my case, most notably, category 16, or he is blatantly violating federal law relative to deliberate indifference to medical needs of inmates.

(DSJ Ex. A at 1). Again, plaintiff does not mention Dr. Herrera by name, nor does he mention his request for a single-cell assignment. Id. at 1.

It is not possible to read either of the Step 1 grievances filed by plaintiff as stating a claim against Dr. Herrera. In Johnson, *infra,* the Fifth Circuit discussed how much detail is required in a grievance for purposes of effectively exhausting administrative remedies. The Court noted that one of the purposes of the exhaustion requirement is to give officials "'time and opportunity to address complaints internally.'" Johnson, 385 F.3d at 517 (citations omitted). In addition, the nature of the complaint will influence how much detail is necessary. Id. For example, a complaint about a correctional officer would identify a specific person, whereas a complaint about a prison condition might not identify any individual. Id.

Grievance No. 2006085588 is not sufficient to exhaust plaintiff's claim of deliberate indifference against Dr. Herrera. The grievance does not mention Dr. Herrera by name, nor

9

does plaintiff raise the issue of a single-cell assignment. Id. at 3-4. The grievance concerns only a problem that plaintiff had with Mr. Moreno and other garment factory personnel. Id. In Grievance No. 2006136563,[6] plaintiff is challenging his kitchen job assignment, arguing that it is in violation of his HSM-18 medical restrictions. (DSJ Ex. A at 1). Nowhere in the grievance does he suggest that Dr. Herrera erroneously changed his restrictions. Indeed, in a September 15, 2005 I-60 to Mary Comstock, he complains that his single-cell restriction has been removed and he inquires on whose authority the change was made. (D.E. 1 at 24-25). He argues to Ms. Comstock that: "Dr. Herrera will verify the restriction. He made it permanent on August 7, 2005 here at ML48." (D.E. 1 at 24-25). Clearly, this unexhausted grievance does not place Dr. Herrera on notice that plaintiff has a claim against him.

In addition, even if either of these grievances could be viewed as stating a claim against Dr. Herrera, plaintiff failed to complete the exhaustion process because he did not file a Step 2 grievance as to either. (See Murphy Aff't at ¶ 2, ¶ 3). In his response, plaintiff claims that he timely filed Step 1 and Step 2 grievances "concerning permanent cell housing in TDCJ," and he reference grievances attached to his original complaint. (D.E. 43 at 4). However, the Step 1 and Step 2 grievances he cites were filed at the Connally Unit, and neither names Dr. Herrera nor alleges a claim against him. See D.E. 1 at 18-19, 21-22. In

---

[6] The response to Grievance No. 2006136563 is not provided by Ms. Murphy. Although defendant has offered a second page, DSJ Ex. A at 2, as the purported response, DSJ Ex. A at 2 is actually the response to a grievance filed at the Connally Unit, Grievance No. 2005150778, as evidenced by the response date and the fact that it is signed by a Connally Unit warden. In fact, DSJ Ex. A at 2 is identical to DSJ Ex. A at 6.

addition, the Connally Unit Step 2 grievance is not processed; there is no indication that it was ever filed with prison officials. (D.E. 1 at 21-22).

Plaintiff's only evidence in which a complaint against Dr. Herrera might be suggested is the October 4, 2006 letter from plaintiff's primary care physician, Dr. Arnold, to Dr. Herrera. (D.E. 1 at 32). In this letter, Dr. Arnold asks that Dr. Herrera implement a permanent single occupancy cell assignment for plaintiff for both physical and psychological reasons. Id. However, even if this request was liberally read to be a complaint against Dr. Herrera, it does not satisfy the ***prison's grievance system*** for purposes of the PLRA. The very purpose of the grievance system would be undermined if outside sources could lodge complaints against prison officials, and officials were deemed to be on notice as a result. Moreover, even if Dr. Arnold's letter could be construed as a Step 1 grievance, there is no subsequent Step 2 grievance. Thus, the letter does not serve to satisfy exhaustion.

The Fifth Circuit has recognized that the exhaustion requirement may, in rare circumstances, be excused where dismissal would be inefficient or would not further the purposes of the PLRA. Wilson, 151 F.3d at 295. For example, exhaustion may be excused where irregularities in the prison administrative system itself prohibited the plaintiff from doing so. Id.; see also Shah v. Quinlin, 901 F.2d 1241, 1244 (5th Cir.1990). An administrative remedy is not available where prison officials ignore or interfere with the prisoner's pursuit of relief. Id. And see Holloway v. Gunnell, 685 F.2d 150, 154 (5th Cir. 1982).

Plaintiff's only excuse for failing to exhaust is his contention that he never received a response to his Step 2 grievances. (D.E. 43 at 4). However, the summary judgment evidence shows that plaintiff only prepared one Step 2 grievance related to Grievance No. 2005150778 filed at the Connally Unit, and it does not name Dr. Herrera. (D.E. 1 at 18-19, 21-22. Moreover, there is no indication this Step 2 grievance was properly filed as there are no file-stamped dates or other markings indicating that prison officials received it. Id. at 21-22. There are no circumstances here to excuse exhaustion.

## VI. Recommendation.

Plaintiff's Step 1 grievances fail to identify Dr. Herrera as an individual against whom plaintiff has a claim, and as such, fail to place Dr. Herrera or prison officials on notice. Moreover, even if the Step 1 grievances did state a claim, plaintiff failed to follow-up with filing Step 2 grievances, and there is no indication that he was prevented from doing so. Thus, plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Accordingly, it is respectfully recommended that defendant's motion for summary judgment to dismiss plaintiff's complaint for failure to exhaust (D.E. 38) be granted, and that plaintiff's claims against Dr. Herrera be dismissed.

Respectfully submitted this 8th day of August, 2008.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and Article IV, General Order No. 02-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).